**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM GRECIA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-2560 |
| | ) | |
| MCDONALD'S CORPORATION | ) | Judge Sharon Johnson Coleman |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Grecia filed a two count complaint against McDonald's Corporation, alleging

direct infringement of two patents he owns. McDonald's moves to dismiss the complaint in its

entirety, arguing Grecia has pleaded himself out of court because the complaint demonstrates that

McDonald's actions do not constitute "use" of the claimed inventions under 35 U.S.C. §271(a). The

Court grants the motion.

**Background**

Grecia alleges that McDonald's infringes claims 9 and 10 of U.S. Patent No. 8,533,860 ("the '860

patent") and claims 12-14 and 24-26 of U.S. Patent No. 8,402,555 ("the '555 patent") through its use

of the "tokenization systems" of several credit companies. (Dkt. 1 ¶¶ 9, 16.) Claim 10 of the '860

patent and claims 13-14 and 24-26 of the '555 patent are dependent on claim 9 of '860 patent and

claim 12 of the '555 patent, respectively. (Dkt. 1-1 at 18, Dkt. 1-2 at 19-20.) Claim 9 is a "system for

authorizing access to digital content using a worldwide cloud system infrastructure". (Dkt. 1 ¶ 10.)

Claim 12 is a "system for monitoring access to an encrypted digital media". (*Id.* ¶ 17.) Both of the

systems are comprised of a first receipt module, an authentication module, a connection module, a

request module, a second receipt module, and a branding module. (*Id.* ¶¶ 10, 17.) Grecia alleges

McDonald's uses the claimed systems as follows. When a McDonald's customer purchases a

McDonald's food item with a credit card, the credit card company's server acts as a receipt module by receiving the primary account number ("PAN") assigned to the credit card. (*Id.*, subpara. a of ¶¶ 10-13, 17-20.) The credit card company's authentication module authenticates the PAN with the issuer of the credit card. (*Id.*, subpara. b of ¶¶ 10-13, 17-20.) Then the credit card company's connection module establishes a connection between the credit card company's payment processor and its token service provider. (*Id.*, subpara. c of ¶¶ 10-13, 17-20.) A token is data that serves as a surrogate for the PAN. (*Id.*, subpara. a of ¶¶ 10-13, 17-20.) The payment processor then acts as a request module and requests from the token service provider the token associated with the PAN. (*Id.*, subpara. d of ¶¶ 10-13, 17-20.) The payment processor then acts as the second receipt module by receiving the token. (*Id.*, subpara. e of ¶¶ 10-13, 17-20.) The credit card company then writes the token to the token vault, or branding module, so that when the same credit card is used for subsequent McDonald's purchases, the token associated with the PAN is available to be cross-referenced. (*Id.*, subpara. f of ¶¶ 10-13, 17-20.)

**Legal Standard**

A complaint will survive a motion to dismiss under Rule 12(b)(6) if its well-pleaded facts when accepted as true and viewed in the light most favorable to the plaintiff state a plausible claim for which relief can be granted. *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

**Discussion**

A party infringes a patent if it "makes, uses, offers to sell, or sells any patented invention" without the authority to do so. 35 U.S.C. § 271(a). McDonald's asserts that the complaint does not plausibly allege direct infringement through "use" of the claimed systems because Grecia does not

and cannot allege that McDonald's controls any of the systems' components. Grecia responds that the only relevant inquiry for purposes of determining "use" is whether the defendant has put a system as a whole into service for its own benefit, which the complaint alleges McDonald's has done. Both parties believe that *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011) supports their respective positions and compels a ruling in their favor.

In *Centillion*, the Federal Circuit addressed for the first time "the issue of infringement for 'use' of a system claim that includes elements in the possession of more than one actor." 631 F.3d at 1283. The court in *Centillion* held that a party need not exercise "physical or direct control over each individual element of the system" in order to "use" it for the purposes of Section 271(a), but "a party must put the invention into service, *i.e.,* control the system as a whole and obtain benefit from it." *Id.* at 1284.

McDonald's argues that the definition of "use" applied by the court in *Centillion* is only applicable to a "divided system" where two different entities operate different components of the system. According to McDonald's the claimed systems here are not divided because the credit card companies control all of the systems' components. Where the entire system is controlled by one entity, McDonald's argues, a different entity cannot be deemed the infringing user of the system.

*Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292 (Fed. Cir. 2011) supports McDonald's argument that the test for "use" is different for divided systems than for inventions controlled by a single party. In *Uniloc,* the plaintiff contended that Microsoft's product-activation feature infringed its patent through use of software algorithms to remotely verify that software being installed by a computer user had not been pirated. 632 F.3d at 1296-98. Microsoft argued that it did not "use" the system because it had no control over the computers of its customers who, when seeking to install Microsoft software, began the product activation process. *Id.* at 1301, 1308. The Federal Circuit rejected the argument because it found that no part of the customers' computers was a component

3

of the claimed invention. *Id.* at 1309. Rather the customers' computers were merely a necessary part of the environment in which the claimed invention functioned. *Id.* The court noted that a patent can be infringed by a single party using a claimed invention even if two parties are required for the invention to function. *Id.*

Grecia argues that McDonald's directly controls at least one component of the claimed systems because it controls the data processing device that sends the PAN to the first receipt module. This argument fails because data processing devices are not a component of the claimed systems. Contrary to Grecia's assertions, the court need not engage in premature claim construction to arrive at that conclusion. Rather the court can rely on Grecia's own description of the claimed inventions in the complaint, which pleads that the system is comprised of a first receipt module, an authentication module, a connection module, a request module, a second receipt module, and a branding module. The complaint does not plausibly allege that data processing devices are a component of the claimed systems. The devices controlled by McDonald's that send the PAN to the first receipt module are, like the Microsoft customers' computers in *Uniloc*, merely part of the environment in which the claimed inventions function. The users of the claimed inventions are the credit companies themselves, not McDonald's.

**Conclusion**

Because the complaint does not plausibly allege that McDonald's uses the claimed inventions, McDonald's motion to dismiss [17] is granted.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED:  August 23, 2016